# SWEET *v.* WEBBER *et al.*

*(Supreme Court of Colorado, May 16th, 1884—Error to the District Court of Chaffee County.)*

1. MINES AND MINING—PLACER CLAIMS. Section 2324, Revised Statutes United States, relating to the marking on the ground, recording certificate of location, and assessment work, applies as well to placer as to lode claims. A placer location not in accordance therewith is irregular.

2. SAME—STATE STATUTE. The State statute (Laws 1879, p. 140,) being in conflict with that provision of the U. S. Statute, is void.

3. SAME—POSSESSION. Mere possession (under irregular location), is unsufficient to protect a mining claim as against a subsequent valid relocation thereof. The right of possession comes only from a valid location.

BECK, C. J.  This was an action brought by plaintiff in error, in the Court below, in support of an adverse claim, filed against an application for a patent to a placer mining claim. Plaintiff claims to own the "Holmes placer claim," consisting of one hundred and sixty acres, situate in Cottonwood mining district, Chaffee county, by purchase from the original owners, who, it is alleged, duly located it in compliance with the local laws and rules of miners of said mining district, and with the laws of the United States and of the State of Colorado, on the 6th day of January, 1879.

It is alleged, and the exhibits offered in evidence show, that eight persons joined in the location, and that a location certificate describing the premises, was filed and recorded in the office of the county clerk and recorder of said county, on the 7th day of January, 1879.

It is alleged that defendants entered upon a portion of said tract, known as the "Ronk placer claim," consisting of forty acres, on the 11th day of May, 1880, and subsequently applied for a patent thereto.

Defendants claimed to have staked off their two claims of twenty acres each, which they style "the Ronk placer claim," on the 20th of March, 1877, but admit that they filed for record no location certificates until April and July, 1880.

The verdict and judgment were for the defendants, and the errors assigned by the plaintiff relate to the rulings of the Court upon the trial, and to the instructions given and refused.

The pleadings and proofs show that defendants made no record of their location for a period of three years after " staking" their claim and taking possession of it. They further show that the plaintiff's grantors located and recorded "the Holmes placer claim," (which includes within its boundaries the Ronk claim,) one year and eight months after the location of the latter.

The testimony is conflicting as to the amount of work and improvements done and made annually by the respective parties on their claims, but the important inquiry, under the errors assigned, is, was the case tried upon a correct construction of the law applicable to the location and possession of placer mining claims?

Plaintiff in error says defendants failed to comply with two essential requirements; viz:

*First*—Their location was not distinctly marked upon the ground so that its boundaries could be readily traced.

*Second*—No record was made of their location until long after their rights of possession were forfeited.

If the foregoing were essential requirements at the time of defendants' attempted location, and if they were disregarded, as alleged, then the "Ronk claim" was subject to relocation, and if the plaintiff in error and his grantors complied with the law in respect to their location and possession, they were entitled to recover.

The plaintiff's location certificate was at first admitted in evidence, and afterwards rejected, and the jury instructed to disregard it, on the ground that it was made and recorded before the passage of the State statute of June 10, 1879, which requires the recording of a location certificate of a placer claim; the Court ruling that prior to the passage of this act no location certificate was required to constitute a valid location of such a claim.

Upon the same theory, apparently, the Court refused or failed to instruct the jury as to the necessity of marking the boundaries of defendants' claims.

It is conceded that prior to the act of June 10, 1879, no State statute specifically applying to the location of placer claims, existed in Colorado, but upon the part of plaintiff in error it is claimed that the act of Congress of May 10, 1872, covered

this class of claims as well as lode claims, and that a compliance with its provisions was necessary to constitute valid locations of both classes of claims.

The provisions relied upon are embodied in section 5 of said act, which section is incorporated in the Revised Statutes of the United States, and numbered therein section 2324. It provides as follows:

" The miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws·of the State or Territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim, subject to the following requirements: The location must be distinctly marked on the ground so that its boundaries can be readily traced. All records of mining claims hereafter made shall .contain the name or names of the locators, the date of location, and such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim. On each claim located after the tenth day of May, 1872, and until a patent shall have been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. On all claims located prior to the tenth day of May, 1872, ten dollars' worth of labor shall be performed or improvements made by the tenth day of June, 1874, and each year thereafter for each one hundred feet in length along the vein until a patent has been issued therefor ; but where such claims are held in common, such expenditure may be made upon any one claim, and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns or legal representatives, have not resumed work upon the claim after failure, and before such location." * * *

The balance of the section makes provision for the forfeiting of the interests of co-owners who fail or refuse to contribute their proportion of expenditures.

Although it was not proven upon the trial that the miners of Cottonwood mining district had made regulations, or that mining usages and·customs existed in that district relating to

the recording of claims, yet it is a matter of common notoriety that rules, usages and customs existed on this subject in all the mining regions of Colorado from the earliest days of Territorial organization, and it is probable that they prevailed in the district mentioned, as well as elsewhere. The failure to prove their existence in this instance may have been in consequence of the rulings referred to.

The above section of the act of Congress appears to require, as prerequisites to a valid location of a mining claim, that the location be distinctly marked on the ground, so that its boundaries can be readily traced, and that such a record of the location be made as will identify the claim and disclose the name or names of the locators, and the date of location.

It does not answer the objection that proof was not made of the proper marking of the location upon the ground, to say that the boundaries of the claim in dispute were admitted, on trial, to be identical with those of the ground sued for. The objection goes to the regularity of the location.

But counsel for defendants in error confidently assert that all the provisions of said section 2324 relate to lode claims only. In this the counsel is greatly mistaken. The provisions of this section refer to both lode and placer claims, as appears by the following adjudications:

The Supreme Court of California held, in a recent case, that the requirement, that on each claim located after the 10th day of May, 1872, until a patent issue therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made each year, applies as well to placer claims as to lode claims, basing the opinion upon the cases of *Jackson* v. *Roby,* and *Roby* v. *Jackson,* decided by the Supreme Court of the United States, at the October Term, 1883, and upon *Smelt-Co.* v. *Kemp,* 104 U. S., 636; *Carney* v. *Arizona Mining Co.,* 1 West Coast R., 851.

The controversy in *Jackson* v. *Roby, supra,* related to a placer mining claim situated on Blue River, Summit county, Colorado, and the point adjudicated involved another provision of said section 2324, viz.: "But where such claims are held in common, such expenditure may be made upon any one claim." Mr. Justice Field says: "The contention of the plaintiff was made upon a singular misapprehension of the

meaning of the act of Congress, where work or expenditure on one of several claims held in common is allowed, in place of the required expenditure on the claims separately. In such case the work or expenditure must be for the purpose of developing all the claims. It does not mean that all the expenditure upon one claim—which has no reference to the developing of the others—will answer." 4 *Colo. L. R.*, p. 356.

Mr. Justice Field refers to the adjudication of the same point in *Smelting Co.* v. *Kemp, supra,* where the illustrations are the sinking of a shaft upon one claim or location for the development of several; and the construction of a flume to carry off the waste material from several locations.

Here, then, are decisions showing that two of the provisions of said section are equally as applicable to placer claims as to lode claims.

In *Chapman* v. *Toy Long*, 4 Sawyer, 33, the point was raised that parties could not locate placer claims *jointly;* but it was decided that the provisions of section 2324, relating to co-owners of mining locations, and providing for forfeiting the interests of any such co-owners who fail to contribute their share of expenditures required by law, applied alike to placer and lode locations.

In Copp's Mining Decisions of the Interior Department, 1874, at page 323, a form of location certificate is given intended to be in compliance with the requirements of the act of Congress of May 10, 1872, for either a vein or placer location.

In Morrison's Mining Rights, 1881, page 218, No. 64 of "Land Office Rules," says: "The regulations hereinbefore as to the manner of marking locations on the ground, and placing the same on record, must be observed in the case of placer locations, so far as the same are applicable," showing the understanding of the Land Department on these subjects.

The terms "claim" and "location" apply indifferently to both classes of claims, and it is apparent from the phraseology of the acts of Congress of 1870 and 1872, considered in the light of the decisions thereon, that it was intended that the same requirements necessary to secure possessory rights, or title in fee, to lode claims, should also be observed in the acquisition of right of possession, or title to placers, except where the re-

quirement is manifestly inapplicable to the latter class, or where different provisions therefor have been made.

In this view of the subject there is no reason why the provisions of section 2324, requiring the location to be distinctly marked on the ground, so that its boundaries may be readily traced, and a record of the claim to be made in manner set forth, should not be held equally applicable to both classes of claims.

The theory upon which the case was tried below, a theory, too, entertained by some law writers of repute, was that the provisions of the act of Congress concerning the marking of boundaries, the recording of claims, and the performance of annual labor to the extent of one hundred dollars on each claim, did not refer to placer claims.

The Court appears to have adopted the view, that if the defendants proved prior discovery of mineral, prior possession, and an annual expenditure of twenty-five dollars upon the Ronk claim, these facts constituted a compliance with the law upon the subject, and they were entitled to a verdict.

On the contrary, however, the act of May 10th, 1872, as we have seen, includes this class of claims, and requires the observance of all the requirements mentioned in section 2324. The act limits the extent of a claim for a single individual to twenty acres, and instead of an annual expenditure of twenty-five dollars, as stated in the instructions to the jury, requires an annual expenditure of at least one hundred dollars on all claims thereafter located. Neither a rule of miners nor a State statute can authorize less, without being in conflict with the law of Congress, and therefore void. We are of opinion that Sec. 2, of the act of June 10, 1879 (Laws 1879, p. 140,) is in conflict with the act of Congress of May 10, 1872, upon this point.

It being evident that error intervened on the trial in respect to the steps necessary to constitute a valid location, and in reference to the requirement concerning annual labor, nothing would seem to remain, in the legal aspect of the case, save the possession. This would clearly be insufficient to protect the claim as against a subsequent valid relocation thereof.

In the language of Chief Justice Waite, in *Belk* v. *Meagher*, 104 U. S., 284: "The right to possession comes only from a valid location. Consequently if there is no location there can

be no possession under it. Location does not necessarily follow from possession, but possession from location.

"A location is not made by taking possession alone, but by marking the ground, recording and doing whatever else is required for that purpose by the acts of Congress and the local laws and regulations."

The Supreme Court of Montana say, in the recent case of *Hopkins* v. *Noyes*, 2 Pacific Reporter, 281: "Possession within a mining district, to be protected or to give vitality to a title, must be in pursuance of the law, and the local rules and regulations. It must stand upon the law and be the result of a compliance therewith. * * * Possession without location carries no title. * * * The mere naked possession of a mining claim upon the public lands is not sufficient to hold such claim as against a subsequent location made in pursuance of the law and kept alive by a compliance therewith."

For the errors mentioned the judgment is reversed and the cause remanded for a new trial. *Reversed.*